# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>    v.<br><br>JOSHUA RAMIREZ,<br>    Defendants. | Case No. 8:23-CR-00149-DOC-1<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO SUPRESS [31]** |

# INTRODUCTION

Before the Court is Defendant Joshua Ramirez's ("Defendant") Motion to Suppress Evidence ("Motion")(Dkt. 31). The Court held a status conference on March 7, 2025, followed by a *Franks* hearing on March 24, 2025, to address this matter. For reasons set forth below, the Court **GRANTS** Defendant's Motion.

## I. BACKGROUND

### A. Facts

Defendant had an acquaintance named Cynthia Galindo ("Galindo"). *Id.* at 6. There was a probation search of Galindo's home (the "Galindo Probation Search") on June 2, 2022, by Los Angeles County Probation. *Id.* During this search, law enforcement reviewed the contents of Galindo's telephone pursuant to probation conditions. *Id*. Law enforcement did not take the phone as evidence, rather they took photos of the contents of her phone. Reporter's Tr. of Proceedings, Mot to Suppress Hr'g ("Rptr. Tr.")(March 24, 2025)(Dkt. 54) at 66-67. This documentation included recording text message conversations between Galindo and Defendant. *See id.* at 67; Motion, Exhibit 2 ("Ramirez Search Warrant") at 9.

Four days after the search on June 6, 2022, Galindo appeared before Los Angeles Superior Court Judge Joseph R. Porras. Motion at 6. At this hearing, the Court reviewed the probation report and determined:

> The court has received a probation officer's report regarding arrest of probationer for violation of probation. The Court reads and considers the report. All counsel believe that at the time of the report the Defendant was off of probation as a matter of law. The Court orders probation terminated as a matter of law as of 04/27/22. The new arrest does not apply.

Motion, Exhibit 1 ("State Court Ruling") at 12.

On June 28, 2022, a search warrant was filed by the Orange County Superior Court. Motion at 7. The search approval was signed by the court on June 22, 2022. *Id.* This warrant commanded a search of 260 West Birch Street, Apartment # 312, Brea, California 92821. *Id.* This location is the residence of Defendant. *Id.* at 1. The probable cause affidavit for the search of Defendant's home (the "Ramirez Search") referred to evidence obtained from the Galindo

Probation Search. *Id.* However, the affidavit did not mention the State Court Ruling about the Galindo Probation Search. *See generally* Motion, Exhibit 2.

### B. Procedural History

Defendant was indicted on November 11, 2023 (Dkt. 1) as to possession with intent to distribute fentanyl. Defendant filed their Motion to Suppress Evidence on March 3, 2025, and requested a hearing pursuant to *Franks v. Delaware,* 428 U.S. 154 (1978)("*Franks* Hearing") to assess the validity of the Ramirez Search Warrant. Motion at 8. Plaintiff United States of America ("the Government") filed the Opposition ("Opp'n.") (Dkt. 34) to Defendant's Motion on March 6, 2025. The Court held a preliminary status conference on March 7, 2025 (Dkt. 35). At this status conference, the Court held that Defendant had made a preliminary showing of the existence of a false statement or omission that was material to the determination of probable cause in issuing the Ramirez Search Warrant and granted Defendant a *Franks* hearing (Dkt. 35). The Government then filed a Supplemental Brief in Opposition to Defendant's Motion ("Supplemental Opposition") (Dkt. 40) on March 20, 2025. The Court held the *Franks* hearing on March 24, 2025 (Dkt. 58). After the hearing, the Government filed a Notice of Appeal to Appellate Court (Dkt. 48) on March 24, 2025.

## II.   LEGAL STANDARD

### A. Fourth Amendment

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, it "contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Arizona v. Evans,* 514 U.S. 1, 10 (1995). Generally, searches and seizures are unreasonable, and therefore invalid, unless conducted pursuant to a warrant based on probable cause. *Missouri v. McNeely,* 569 U.S. 141, 148 (2013).

"Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *United States v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992). One remedy for a Fourth Amendment violation is the exclusionary rule, which

suppresses unlawfully obtained evidence. *See Weeks v. U.S.,* 232 U.S. 383, 392 (1914). The Supreme Court first recognized this principle in *Weeks,* holding that to permit unlawful government intrusion into a person's home "would be to affirm by judicial decision a manifest neglect, if not an open defiance, of the prohibitions of the Constitution, intended for the protection of the people against such unauthorized action." *Id.* at 394. Thus, evidence derived from unconstitutional conduct is generally considered tainted and thus admissible, subject to certain exceptions. *United States v. Gorman,* 859 F.3d 706, 716 (9th Cir. 2017) (quotations omitted).

Search warrants are typically supported by affidavits—sworn statements that outline the facts and establish probable cause for believing that evidence of a crime will be found at the specified location to be searched. While these affidavits are presumed valid, the Supreme Court in *Franks* recognized a narrow exception allowing defendants to challenge their accuracy. 438 U.S. at 171. Under *Franks,* a defendant may contest the truthfulness of factual statements or omissions in an affidavit supporting a search warrant, thereby undermining the warrant's validity and any resulting search or seizure. *Id.* at 171-72.

The Supreme Court has held that, in certain circumstances, the Fourth Amendment requires a *Franks* hearing—conducted at the defendant's request—to assess the veracity of an affidavit. *Id.* To obtain a *Franks* hearing, a defendant must make a substantial preliminary showing that: (1) the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant, and (2) the false or misleading statement or omission was material, *i.e.,* necessary to find probable cause. *United States v. Norris,* 942 F.3d 902, 909-10 (9th Cir. 2019) (quoting *United States v. Perkins,* 850 F.3d 1109, 1116 (9th Cir. 2017)) (quotations omitted). If the defendant meets this threshold, the court will grant a *Franks* hearing. To prevail at the hearing, the defendant must then prove both prongs by a preponderance of the evidence. *Id.* (citing *United States v. Martinez-Garcia,* 397 F.3d 1205, 1214-15 (9th Cir. 2005)). If a defendant satisfies both requirements, the "search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks,* 438 U.S. at 156.

## III. DISCUSSION

### A. Hearing Testimony

Three law enforcement officials testified at the hearing. First, the Government presented Detective Patrick Orta ("Detective Orta"), who was responsible for assembling the Ramirez Search Warrant but did not personally draft the facts or probable cause statement while serving with the Inglewood Police Department. Rptr. Tr. at 12. Detective Orta was also affiliated with the Los Angeles Interagency Metropolitan Police Apprehension Crime Task Force (L.A. IMPACT), a multi-agency task force comprising various state and federal law enforcement entities. *Id.* at 5-6.

Next, Deputy Probation Officer Quinonez ("Officer Quinonez") testified. He was present during the Galindo Probation Search and later authored the probation report documenting the search. *Id.* at 29.

Finally, Special Agent Mike Sier from the Drug Enforcement Agency ("DEA") testified. He had been conducting an ongoing investigation into Galindo, requested to accompany Officer Quinonez on the Galindo Probation Search, and was responsible for drafting both the probable cause statement and the factual basis for the Ramirez Search Warrant. *Id.* at 12, 25, 26.

### B. Intentional or Reckless Disregard Element

Based on the evidence presented at the *Franks* hearing, this Court holds that Defendant demonstrated by a preponderance of the evidence that information was intentionally or recklessly omitted. *See Norris,* 942 F.3d at 909-10. This case involves an omission: the search warrant for the Ramirez Search relied entirely on evidence from the Galindo Probation Search but failed to disclose the State Court Ruling invalidating the Galindo Probation Search. Motion at 7, Exhibit 1 at 12, Exhibit 2 at 9-11. This omission created a misleading impression that the Galindo Probation Search was lawful when, in reality, it was previously invalidated by the State Court Ruling. The question then becomes whether this omission was intentional or reckless. *See Franks,* 438 U.S. at 171.

The Ninth Circuit in *U.S. v. Stanert,* 762 F.2d 775, 780-81 (9th Cir. 1985) held that the Fourth Amendment requires that a defendant be permitted to challenge a warrant affidavit when

it contains deliberate or reckless omissions of facts. The Court explained that "[b]y reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning." *Id.* at 781. This Court acknowledges, however, that an affiant is not required to include every conceivable conclusion in an affidavit for it to be valid. *See United States v. Burnes,* 816 F.2d 1354, 1358 (9th Cir. 1987). And a mere negligent omission, moreover, does not even justify a *Franks* hearing. *See U.S. v. Dozier,* 844 F.2d 701, 705 (9th Cir. 1988).

  Here, the Court holds that the omission of the State Court Ruling was at least a reckless disregard because the evidence at the *Franks* hearing demonstrated a pattern of inconsistent statements, failures in communication, and a lack of diligence ensuring the accuracy of the information included in the Ramirez Search Warrant affidavit. The Court's reasoning is as follows.

  First, the State Court Ruling that declared the Galindo Probation Search invalid was a matter of public record and readily accessible to law enforcement. This is evidenced by Officer Quinonez's declaration, in which he stated that, despite not being physically present at the hearing, he was aware of the outcome "sometime between June 6, 2022 and October 4, 2022,"—demonstrating that this information was easily obtainable by law enforcement officials. Opp'n, Declaration of Jesus Quinonez ("Quinonez Decl.") at ¶ 11.

  Second, Officer Quinonez's testimony at the hearing revealed significant inconsistencies regarding when he became aware of the State Court Ruling and when he relayed this information to Agent Sier. Agent Sier's knowledge of the State Court Ruling is central to this case, as he was the individual who drafted the probable cause statement for the Ramirez Search Warrant and made the omission at issue. The Ninth Circuit has held that when the omission of a material fact results from a non-affiant government official—such as an officer who deliberately withholds information from the affiant—that omission can serve as the basis for a *Franks* hearing. *U.S. v. DeLeon,* 979 F.2d 761, 764 (9th Cir. 1992)("misstatements and

omissions of government officials which are incorporated in an affidavit for a search warrant are grounds for a *Franks* hearing, even if the official at fault is not the affiant").

In Officer Quinonez's pre-hearing declaration, he stated that he learned of the State Court Ruling "sometime between June 6, 2022, and October 4, 2022," and that "[o]n or about October 4, 2022, [Officer Quinonez] received an email from SA Sier inquiring about what happened after Galindo's arrest. [Officer Quinonez] informed SA Sier that Galindo's probation term should have been terminated in April 2022." Quinonez Decl. at ¶ ¶ 11, 12.

However, his hearing testimony contradicted this statement multiple times. When questioned under oath, he initially testified:

> Q: At the end of that hearing, were you advised as to what happened?
>
> A: No.
>
> Q: Never?
>
> A: I wasn't aware of what happened in court until it was brought to my attention by Agent Sier. He wanted to see the results of the court hearing. So I followed up on it, and I informed him of the following.
>
> Q: When did this happen?
>
> A: I don't recall exactly what date it was.

Rptr. Tr. at 31.

Later in his testimony, Officer Quinonez changed his account, stating that he was actually aware of the hearing's outcome in the immediate days following the search—around June 9, 2022. *Id.* at 32. He then contradicted his prior statement in his declaration, asserting that his conversation with Agent Sier did not take place via email in October 2022, but rather during a phone call with Agent Sier shortly after the search. *Id.* at 35-36. According to his testimony, Agent Sier called him for an update, and Officer Quinonez informed him of the court's ruling. *Id.* When asked about the timing of this phone call after the court hearing date of June 6, 2022, he stated: "I want to say possibly within the next day or two when I made contact with Sier." *Id.* at 35.

|   |   |
|---|---|
| 1 | When further questioned: |
| 2 | THE COURT: So by June 9th, let's say, you had informed Sier that the |
| 3 | search, for want of a better word, was invalid? |
| 4 | THE WITNESS: Yes. |
| 5 | *Id.* at 36. |
| 6 | THE COURT: All right. Just a moment. So the termination of probation |
| 7 | occurred, and Sier would know about this on at least two or three days |
| 8 | later? |
| 9 | THE WITNESS: Correct. |
| 10 | *Id.* at 38. |
| 11 | THE COURT: By June 6th, 7th, 8th, 9th, 10th, 11th, Sier, as part of this |
| 12 | task force, would have known that that was an invalid search because you |
| 13 | told him that? The Court said it was invalid? |
| 14 | THE WITNESS: Yeah, that the result of the court said that. |
| 15 | *Id.* |
| 16 | Despite these statements, when the government asked: |
| 17 | Q. Did Special Agent Sier e-mail you to ask for the update? |
| 18 | A. He called me |
| 19 | *Id.* at 40. |
| 20 | The government then moved to refresh Officer Quinonez's recollection and handed him |
| 21 | an email between him and Agent Sier dated October 4, 2022, and further clarified: |
| 22 | THE COURT: Did you have a conversation with Sier before that e-mail? |
| 23 | THE WITNESS: No. I was incorrect |
| 24 | *Id.* at 41. |
| 25 | Q. Now that you've seen this e-mail chain, your recollection is that Special |
| 26 | Agent Sier asked you for that update for the first time in October of 2022? |
| 27 | A. Yes. |
| 28 | *Id.* at 42. |

|   |   |
|---|---|
| 1 | Q. I'll ask it in a better way, then. This October 4th e-mail, is that the first |
| 2 | time you recall telling Special Agent Sier what happened at that court |
| 3 | hearing? |
| 4 | A. Yes. |
| 5 | Q. Okay. And as far as you know, before this October 4th e-mail from |
| 6 | Special Agent Sier, did you know what had happened at the court hearing? |
| 7 | A. No. We don't follow up on the cases. |

*Id.* at 42-43.

These inconsistencies in Officer Quinonez's testimony raise serious questions about the accuracy of the information provided to Agent Sier and the timeline of events leading to the Ramirez Search Warrant.

A third factor in the Court's reasoning is that Agent Sier's hearing testimony also demonstrates similar failures in memory and accuracy. Despite being the central figure responsible for drafting the probable cause statement, the government initially failed to produce him as a witness. *Id.* at 25. When he finally testified, he was unable to recall key details, including when he first learned about the court ruling or whether he had discussed it with Officer Quinonez before the October 4, 2022 email. *Id.* at 69.

His repeated statements of "I don't recall" raise serious concerns about the reliability of the information he provided in support of the search warrant. When asked if he communicated with Officer Quinonez prior to the October 4, 2022, email regarding the Galindo search, he responded: "I don't recall." *Id.* When asked again he stated: "It's possible, but I don't remember talking to that person between those two times." *Id.* These repeated failures to recall critical information not only undermine the credibility of Agent Sier's testimony but also cast doubt on the accuracy of the probable cause statement drafted.

Fourth, the Court finds it problematic that a sophisticated task force like L.A. IMPACT lacks an established procedure to track and account for court orders affecting their ongoing cases. There was enough sophistication for the DEA to know about the Galindo Probation Search in advance to join it. *See id.* at 30. Agent Sier contacted Officer Quinonez before the

search, requested to participate, and conducted the search alongside another DEA agent while Officer Quinonez waited outside. *See id.* at 61, 65. There was enough sophistication for Agent Sier to photograph Galindo's text messages and the contents of her phone. *See id.* at 67. There was enough sophistication for Officer Quinonez to find out about the outcome of the court hearing after the Galindo Probation Search. *See* Quinonez Decl. ¶ 11. There was enough sophistication for Agent Sier to follow up with Officer Quinonez via email on October 4, 2022, about the search. *See id.* at ¶ 12. There is enough sophistication for the L.A. Probation Office to document court rulings terminating probation in their case notes, ensuring that probation searches are not conducted on individuals who are no longer under supervision. *See* Rptr. Tr. at 47. There was enough sophistication for Agent Sier to send the probable cause statement and supporting facts to Detective Orta to obtain the Rameriz Search Warrant. *See id.* at 10. There was enough sophistication to include all evidence from Galindo's phone and text conversations in the Rameriz Search Warrant. *See* Motion, Exhibit 2 at 9-11.

Yet somehow, there is not enough sophistication to respect court rulings and protect constitutional rights.

Detective Orta, who worked with L.A. IMPACT, testified:

> Q. Would you agree with me, sir, that L.A. IMPACT, as large as it is, you have some obligation to apply rulings that Courts make with regard to the investigations that you people are doing?
>
> A. No.
>
> Q. You don't think you have that obligation?
>
> A. No.
>
> Q. You don't think anyone has that obligation in your operation?
>
> A. We receive a case. We conduct our investigation on the case. We file the case if need be, and then we move on to other cases.

Rptr. Tr. at 21.

Further, when Detective Orta was asked:

Q. Sure. Is there a procedure for you to be advised of a happenstance that occurs in court that is on the very point of what you are writing and requesting a search warrant on?

A. If the information gets to me.

*Id.* at 22.

But beyond that, no formal procedure seems to exist. Thus, the Court is left with one conclusion: the sophistication is selective, and the omission was at the least a reckless disregard.

Accordingly, given the totality of the evidence, this Court finds that Defendant has shown by a preponderance of the evidence that law enforcement officers acted with reckless disregard for the truth by omitting the State Court's Ruling invalidating Galindo's Probation Search in the Ramirez Search Warrant Affidavit.

### C. Material Misstatement or Omission Element

The second element that Defendant must establish by a preponderance of the evidence is that the omission was material to the finding of probable cause. *See Norris,* 942 F.3d at 909-10. As to materiality, "[t]he pivotal question is whether an affidavit containing the omitted material would have provided a basis for a finding of probable cause." *U.S. v. Garcia-Cruz,* 978 F.2d 537, 541 (9th Cir. 1992). Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place" *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Here, the state court had already ruled that the Galindo Probation Search was invalid at the June 6, 2022, hearing. The state court judge explicitly said in the minute order:

> The court has received a probation officer's report regarding arrest of probationer for violation of probation. The Court reads and considers the report. All counsel believe that at the time of the report the Defendant was off of probation as a matter of law. The Court orders probation terminated as a matter of law as of 05/27/22. The new arrest does not apply.

Motion, Exhibit 1 at 11.

This Court interprets the state court's ruling as a determination that the Galindo Probation Search was invalid as a matter of law. Because the Galindo Probation Search was

invalid, any evidence obtained from it was tainted and could not form the basis for probable cause in the Ramirez Search Warrant under the "fruit of the poisonous tree" doctrine. *See Segura v. United States,* 468 U.S. 796, 804 (1984). Under Supreme Court precedent, the exclusionary rule extends not only to "primary evidence obtained as a direct result of an illegal search or seizure" but also to "evidence later discovered and found to be derivative of an illegality." *Id.* Although the Supreme Court has recognized exceptions to this rule, none apply here. *See Utah v. Strieff,* 579 U.S. 232, 238 (2016).

Had the magistrate judge been informed of this state court's invalidity ruling, the tainted evidence from the Galindo Probation Search would necessarily have been excluded. This omission was therefore material because it directly impacted the probable cause determination. And without the evidence obtained from the Galindo Probation Search, the probable cause affidavit was substantially weakened.

The remaining evidence concerning Ramirez consisted only of: Ramirez's relationship with Galindo, the fact that Galindo visited Ramirez's home, that there are 480 contacts between Galindo's phone and the phone law enforcement believed to belong to Ramirez, and the fact that Ramirez resides at the Brea apartment. *See generally* Motion, Exhibit 2. Critically, none of this remaining information establishes a "fair probability" that evidence of criminal activity would be found inside Ramirez's apartment. *See Garza*, 980 F.2d at 550. The affidavit contains no evidence—outside of the text messages obtained from the invalid Galindo Probation Search—indicating that drugs were present at Ramirez's residence. *See generally* Motion, Exhibit 2. Unlike cases where the Ninth Circuit has inferred the presence of contraband in a home based on a suspect's known drug trafficking activities here, no such inference is justified. *See United States v. Fannin*, 817 F.2d 1379, 1381-82 (9th Cir. 1987).

Accordingly, because the omission of the state court ruling materially affected the probable cause determination, the search warrant for Ramirez's home was invalid and the evidence obtained as a result must be suppressed.

The government points to the Ninth Circuit case *United States v. Guthrie,* 931 F.2d 564 (9th Cir. 1991), stating that the Court's standing ruling is inconsistent and incorrect. But this

case is wholly distinct from *Guthrie*. Supplemental Opposition at 3. In *Guthrie,* law enforcement conducted a search of a warehouse (the "Warehouse Search") based on information from Guthrie's former wife, who claimed that he was operating a drug lab at the warehouse. *Id.* at 566. While preparing the affidavit for the warrant supporting the Warehouse Search, the officer instructed Guthrie's former wife to provide false information, which was then incorporated into the affidavit. *Id.* The Warehouse Search produced evidence that provided probable cause for a subsequent warrant to search Guthrie's home and a storage locker, resulting in the seizure of evidence. *Id.* Guthrie then sought a *Franks* hearing, arguing that the affidavit for the Warehouse Search contained a false statement and that the search was therefore unlawful. *Id.* at 569. The Ninth Circuit upheld the district court's decision that Guthrie lacked standing to challenge the Warehouse Search because he failed to demonstrate a reasonable expectation of privacy in the warehouse. *Id.*; *United States v. Salvucci,* 448 U.S. 83, 95 (1980)(holding that a defendant bears the burden of demonstrating that the he or she had a legitimate expectation of privacy in the place to be searched to establish standing).

      There is a distinction with a difference between *Guthrie* and this case, because the affidavit being challenged in this case is for the search of *Defendant's own home* where he has a reasonable expectation of privacy. The Ramirez Search Warrant itself confirms that Ramirez entered into a lease for the apartment that was searched and that the warrant pertains to. *See Minnesota v. Carter,* 525 U.S. 83, 96 (1998)("We were right to hold in *Chapman v. United States,* 365 U.S. 610 [. . .](1961), that the Fourth Amendment protects an apartment tenant against an unreasonable search of his dwelling, even though he is only a leaseholder."). This case is further distinct from *Guthrie* because here, there was a legal determination that the Galindo Probation Search was invalid, whereas in *Guthrie*, no such legal determination was made by a court. Therefore, the invalid nature of the Galindo Probation Search can be used as a basis for challenging the evidence used in the Ramirez Search Warrant.

      **D. Good Faith Exception**

      The government argues that even if the affidavit for the Ramirez Search did not establish probable cause, the evidence seized in the search is admissible because of the good faith

exception. Opp'n. at 14. The Supreme Court has recognized "four situations that per se fail to satisfy the good faith exception." *United States v. Underwood,* 725 F.3d 1076, 1085 (9th Cir. 2013)(discussing *United States v. Leon,* 468 U.S. 897 (1984)). One of those situations is where an affiant misleads the issuing magistrate or judge by making a false statement or recklessly disregarding the truth in making a statement. *Id.* The Court finds that as analyzed above, Agent Sier's reckless disregard for the truth—by not including the State Court's Ruling concerning the Galindo Probation Search—falls squarely within this situation. Thus, the good faith exception is not applicable here.

### IV. Disposition

For the foregoing reasons, the Court **GRANTS** Defendant Ramirez's Motion to void the warrant obtained for the Ramirez Search and the fruits of the Ramirez search are thus **SUPPRESSED**.

IT IS SO ORDERED.

DATED: April 2, 2025

_____
DAVID O. CARTER
United States District Judge